STOBBELAAR *v*. BERG.

1. APPEAL AND ERROR—FINDING OF COURT TREATED AS SPECIAL VER-
DICT BY JURY—WEIGHT OF EVIDENCE.
    In a case tried by the court without a jury, a finding of the
    court must be treated by the Supreme Court as would a
    special verdict of a jury, and if there is evidence to support
    it the judgment founded thereon will not be reversed unless
    such finding is against the clear weight of the evidence.

2. MOTOR VEHICLES — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE —
WEIGHT OF EVIDENCE.
    The finding of the trial court that plaintiff, struck by an auto-
    mobile while crossing a street, was free from contributory
    negligence, *held*, not contrary to the clear weight of evidence.

3. SAME—REASONABLE CARE.
    A pedestrian who, in crossing a street, sees an approaching
    vehicle, but in the exercise of reasonable care proceeds on
    her way believing she can safely do so, is not guilty of con-
    tributory negligence, although, due to the negligence of the
    driver of the vehicle, she is struck and injured.

Error to Muskegon; Vanderwerp (John), J. Sub-
mitted April 12, 1929. (Docket No. 125, Calendar
No. 34,214.) Decided June 3, 1929.

Case by Nancy Stobbelaar against Katherine Berg
and another for personal injuries. From judgment
for plaintiff, defendants bring error. Affirmed.

*Wm. J. Branstrom*, for plaintiff.

*Alexis J. Rogoski*, for defendants.

NORTH, C. J.  This suit was brought to recover
damages for injuries sustained by plaintiff in conse-
quence of her being struck by an automobile owned

by the defendant Katherine Berg and driven at the time by her brother, Wigger Klevering. The accident happened about 7 : 30 in the evening of January 7, 1927, as the plaintiff and a companion on their way to church were attempting to cross Peck street in the city of Muskegon at the corner of Southern avenue. At the time of the accident the plaintiff was 63 years of age, but well preserved both mentally and physically for one of her years. Her companion was 72 years old and less active than plaintiff. The driver of the car was approaching the intersection of Peck street and Southern avenue going in a northerly direction at a rate of speed of from 15 to 20 miles per hour. The testimony discloses that there were icy spots on the pavement, and that as the plaintiff and her companion proceeded easterly across the street on the northerly line of Southern avenue they appeared to be looking downward, which act was obviously necessitated by the condition of the pavement. At the time of being struck these ladies had proceeded nearly across the street. There is some testimony that plaintiff was about to step upon the easterly curb of Peck street at the time. She was seriously injured, and her companion died within a few days from injuries sustained in this accident.

The case was first tried by a jury which rendered a verdict of $1,500 in favor of the plaintiff, but the same was set aside on the ground that the amount was inadequate. Upon the second trial the jury disagreed; but by stipulation of counsel the case was then submitted to the trial judge for determination upon the proof taken in the case on the second jury trial. The court found that the plaintiff was entitled to recover, and rendered a judgment for damages in the sum of $5,600. The defendants review

by writ of error. Upon the oral argument in this court it was conceded by defendants' counsel that the only question presented by the record is whether the trial court was justified in finding that the plaintiff was free from contributory negligence.

The facts hereinbefore recited are amplified by the testimony given by the plaintiff, some of which is as follows:

"*Q.* What did you do as you stepped down on the street?

"*A.* The first thing was to look to the left.

"*Q.* Did you do that?

"*A.* Yes, we did.

"*Q.* Did you see any cars?

"*A.* At some distance, but none very near.

"*Q.* Did you proceed out to the center of the street?

"*A.* Yes, sir.  *  *  *

"*Q.* When did you again look to see if there was traffic?

"*A.* We were practically looking all the time, first one way and then the other way, and there were cars, but at some distance.

"*Q.* You did see lights at some distance?

"*A.* Yes.

"*Q.* Did you stop when you got in the middle of the street?

"*A.* Stop, I cannot say that we stopped. We walked on in order to get there; it was a little icy and we paid attention to be careful of that, too.

"*Q.* Did you see any cars?

"*A.* Yes.

"*Q.* And how far were these cars from where you were walking?

"*A.* Not near enough to be a menace; we thought it was perfectly safe.  *  *  *  I know there were cars from both ways, but not near enough to notice; we thought we were safe.

"*Q.* Did any car get close to you?

"*A.* Evidently did.

"*Q.* While you were in the center of the street?

"*A.* No, sir.

"*Q.* Did you notice any cars close to you until you got to the east side or the curb on Peck street?

"*A.* We saw nothing until just that moment.

"*Q.* And where was it you saw something, when you first noticed something?

"*A.* It was just when we were practically across going to step on the uprise—on the curb,   *   *   * on the east side of the street.   *   *   * I did not see any lights on that car and did not get any warning of a horn, or a signal of any kind. I am sure as anybody can be that there were no lights on that car. I cannot say how many times I looked both ways as I was crossing the street, but I looked all the time, one way and then another.

"*Q.* No cars at all close to you until you got way over to the east side and this car struck you?

"*A.* Yes, sir.

"*Q.* You say you were ready to step on the curb?

"*A.* Yes, sir."

Peck street runs north and south and is 30 feet from curb to curb. It is a through street, and it is fairly inferable from the testimony that the automobile was traveling at least ten times as fast as were the plaintiff and her companion. Hence when the plaintiff left the center line of Peck street, the automobile which was approaching at a uniform rate of speed was at least 150 feet distant. These two elderly ladies surely had some rights in the use of the street. Plaintiff's testimony is that she looked and saw one or more automobiles approaching from the south, but the fair inference from her testimony is that she was reasonably led to believe she could continue on her way across the street in safety. This

is not a case where a pedestrian carelessly stepped in front of an approaching automobile, but rather one where the driver in reckless disregard of consequence ran the pedestrian down. There was ample room for the driver of this automobile to have passed the plaintiff and her companion in safety, as they were about to step upon the easterly curb. Evidently plaintiff's judgment that she had time to cross in safety would have been justified if the driver had been exercising reasonable care as plaintiff had a right to assume he would. Instead of operating his automobile in a lawful manner, there is testimony tending to show that the driver was proceeding without lights, that he gave no warning of his approach, that he did not slacken his speed at the intersection of these streets and this notwithstanding he testified his vision of the roadway in front of his machine was badly impaired by reflection upon his windshield of the lights of a car upon the street behind him. These phases of the record are noted not as bearing upon the driver's negligence, which is admitted, but as circumstances which lend credence to plaintiff's claim that she was exercising reasonable care in her effort to cross the street in safety at a time and place where her attention was necessarily more or less distracted by the icy condition of the pavement.

The circuit judge embodied the following in his findings of fact:

"7. That plaintiff crossed said Peck street at a time and place where she had a right to cross, and that in crossing said street she was careful and cautious and exercised due and reasonable care for her own safety and the safety of her companion; that she did not in any degree contribute to the injuries she sustained."

As was said in *Bailey* v. *Jackson*, 241 Mich. 284, this finding must be treated by us as would a special verdict of a jury, and if there be evidence to support it the judgment founded thereon will not be reversed unless such finding is against the clear weight of evidence. See, also, *Dows* v. *Schuh*, 206 Mich. 138; and *Webber* v. *Ford Motor Co.*, 245 Mich. 216. The judgment of the trial judge that the plaintiff was free from contributory negligence is not contrary to the clear weight of evidence. The facts presented by this record readily distinguish this case from *Molby* v. *Detroit United Ry.*, 221 Mich. 419; *Molda* v. *Clark*, 236 Mich. 277; *Neeb* v. *Jacobsen*, 245 Mich. 678, and others upon which appellant relies. In each of the cited cases, it may be said as in *Molby* v. *Detroit United Ry.*, *supra*:

"This case does not fall within that line of cases where plaintiff saw the car or train approaching and in the exercise of reasonable prudence concluded that he could cross in safety."

The instant case does fall squarely within the law of those cases wherein the injured party saw the approaching vehicle, but in the exercise of reasonable care proceeded on her way believing she could safely do so. The judgment rendered in the circuit court was justified by the record, and is affirmed.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.