RICHARDS-WILCOX MANFG. CO. v. TALBOT & MEIER.

1. APPEAL AND ERROR—FINDING OF FACT AS BINDING AS SPECIAL VERDICT.

In trial by court without jury, court's finding of fact on conflicting testimony is as binding on Supreme Court as special verdict.

2. CORPORATIONS—FOREIGN CORPORATION—ILLINOIS CONTRACT NOT SUBJECT TO STATE LAW.

Where contract for sale of folding partitions in this State by Illinois corporation was forwarded to its home office for approval, it was Illinois contract, and therefore not subject to provisions of Act No. 84, Pub. Acts 1921, requiring foreign corporations doing business in this State to be licensed thereunder.

3. SAME—INTERSTATE COMMERCE—LICENSES.

Foreign corporation installing folding partitions in building within State pursuant to contract executed without State was engaged in interstate commerce, where such installation was special work and was necessary part of sale, so that said corporation while engaged therein was not doing business in this State contrary to Act No. 84, Pub. Acts 1921, although not licensed under said act.

Error to Wayne; Lamb (Fred S.), J., presiding. Submitted October 21, 1930. (Docket No. 111, Calendar No. 35,258.) Decided December 2, 1930.

Assumpsit by Richards-Wilcox Manufacturing Company, an Illinois corporation, against Talbot & Meier, a Michigan corporation, on a contract to furnish special building material. From a judgment for plaintiff, defendant brings error. Affirmed.

*Anderson, Wilcox, Lacy & Lawson* (*Earl L. Shimer* and *Helen W. Miller,* of counsel), for plaintiff.

*Frank C. Cook* and *John P. O'Hara* (*A. L. Baumann,* of counsel), for defendant.

NORTH, J. The defendant was the general contractor for the construction of a Y. M. C. A. building in Detroit. The Paul O. Winkler Company was the subcontractor for the carpentry work. This latter company contracted with plaintiff for the purchase and installation of "Fold-R-Way Folding Partitions," which contract plaintiff performed. Not having received the contract price, plaintiff threatened to place a lien upon the building. To prevent this, the defendant in writing guaranteed to plaintiff payment of the amount due it. The subcontractor became a bankrupt. Plaintiff brought

this suit upon defendant's written guaranty and had judgment, the case having been tried in the circuit court without a jury. The defense urged was based upon the fact that plaintiff was a foreign corporation, organized under the laws of Illinois, and that prior to the time suit was instituted it had not been authorized to do business in Michigan, and therefore could not make a valid contract in this State. (Act No. 84, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 9053(1) *et seq.*]). Defendant asserted that plaintiff in the performance of its contract was doing business in this State. In this connection, plaintiff contended that the contract was consummated in Illinois, that the sale of its goods was interstate commerce, and that, because it required special skill and knowledge, the installation of the partitions was an essential, appropriate, and necessary part of the interstate transaction. Plaintiff asserted it was not able to carry on interstate commerce incident to the sale of its products of this character unless as a part of the transaction it contracted to install and place them in an operative condition. The circuit judge filed findings of fact and law in part as follows:

"That the said partitions and hardware were shipped by the plaintiff from the factory into the State of Michigan, and that thereafter the plaintiff did deliver to and install in said building the said Fold-R-Way folding partitions as provided for in said contract. * * *

"That the installation of the said Fold-R-Way folding partitions was done under the direct and immediate supervision of the plaintiff's engineer, E. F. Brumbaum. * * *

"The court further finds that the Fold-R-Way folding partitions sold and installed by the plaintiff were goods in a class known as specialties, and that

they were of an intricate nature with hardware of patented features, and that special knowledge, training, experience, and mechanical skill are required to properly install said partitions. That plaintiff's engineer, Mr. Brumbaum, who supervised the installation under this contract, had received special training at plaintiff's factory. * * *

"That good workmanship required that they be installed by the people who manufactured them. That the goods sold by the plaintiff were of an intricate or peculiar quality or complexity, and that the installation was appropriate and essential to the sale and to the accomplishment of the transaction, and that the plaintiff could not sell its goods in the State of Michigan without agreeing to and installing them."

There is a conflict in the testimony, but the foregoing finding of the court is sustained by competent proof and is binding upon us as a special verdict. *Bailey* v. *Jackson,* 241 Mich. 282; *Otto Misch Co.* v. *E. E. Davis Co.,* 241 Mich. 285; and *Stobbelaar* v. *Berg,* 247 Mich. 121. We quote in part the testimony supporting the foregoing finding. Mr. Brumbaum, plaintiff's representative, testified:

"We call them doors, but it is really a removable partition. * * * It requires considerable special knowledge to install and hang the doors and to get them to work properly and keep working properly. * * * It is absolutely necessary that the hardware be put on in the proper relation and necessary clearance allowed for any warping or swelling of the doors. There are certain features of the hardware which are patented and it is a very special hardware. * * * We never tried to sell the doors; we endeavored to sell the hardware, and it was very unsuccessful * * * because it proved that the contractors could not erect that class of material. * * * We found it was impossible for us

\* \* \* to do any kind of business in that particular line of our hardware unless we installed the jobs complete and furnished the doors and did the erection.

"*Q.* State whether or not the reason for that was that it was not possible for other people to install them properly?

"*A.* That is just why it was. It was impossible for contractors to install that equipment properly."

The architect on this building testified:

"I would further say that the doors referred to come under the class known as specialties, and they require a special knowledge and skill in properly installing them."

Mr. Burkholder, one of defendant's witnesses, upon being asked what he meant by specialties, said:

"Such as folding doors that are made by manufacturers that specialize in folding doors and the equipment and hardware that go with it."

The issue presented falls within and is controlled by a principle of law recognized in *Power Specialty Co.* v. *Michigan Power Co.,* 190 Mich. 699; *York Manfg. Co.* v. *Colley,* 247 U. S. 21 (38 Sup. Ct. 430, 11 A. L. R. 611); *Browning* v. *City of Waycross,* 233 U. S. 16 (34 Sup. Ct. 578); and *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229).

In the *Power Specialty Company Case, supra,* a judgment for the plaintiff, nonresident corporation, was reversed because, as Chief Justice STONE said:

"We think the vital question upon this point is whether the installing of these superheaters by plaintiff was such an essential requisite to the sale of them that it can be said that but for the installation by the plaintiff it could make no sale. \* \* \*

We are constrained to say that plaintiff failed to show by evidence whether or not purchasers might, or might not, themselves readily install these super-heaters, or have them installed by other local workmen. \* \* \* We think that the plaintiff failed to show the necessity of itself installing these super-heaters as an essential requisite to the sale of them. If such were the case, then, clearly, the State could not hamper or place it in a strait-jacket so as to destroy the possibility of itself doing business of an inherently interstate commerce character.''

In *Haughton Elevator, etc., Co.* v. *Candy Co.*, 156 Mich. 25, recovery was denied because the contract, which was construed as a whole, provided not only for the installation of a new elevator sold by the non-resident corporation to the defendant, but also repair work on another elevator. Judge Grant said:

''If this contract were merely for the installation of a new elevator, plaintiff could urge with much reason that it was an act of interstate commerce.''

Plaintiff herein claims this contract was consummated in the State of Illinois under whose laws plaintiff is incorporated. There is testimony to sustain this contention. The trial judge found:

''The contract (after being signed by plaintiff's local agent and by the purchaser) was then forwarded to the home office at Aurora, Illinois, and there approved by the credit department of the plaintiff as shown by the approval stamp on said contract bearing the following words and figures, 'O. K. May 16, 1927, Credit Department, D plus 2.' \* \* \* (and) whether or not the contract was a Michigan contract or an Illinois contract \* \* \* is not controlling in this case.''

If this contract was executed elsewhere than in the State of Michigan, under our holding it does not fall within the provisions of the statute upon which defendant relies.

"Although a foreign corporation was doing business in Michigan without securing a license in compliance with Comp. Laws Supp. 1922, § 9053 (164–168), a valid contract executed by it outside the State was not thereby rendered invalid, since the act (section 9053[166]) strikes at contracts executed within the State and not those executed elsewhere." (Syllabus) *Westerlin & Campbell Co.* v. *Milling Co.,* 233 Mich. 384.

Plaintiff's contract was not in violation of the Michigan statute regulating foreign corporations doing business in Michigan. It was valid between the original parties, and the defendant bound itself by its written guaranty of payment.

The judgment entered in the circuit court against the defendant for the amount of plaintiff's claim is affirmed, with costs to the appellee.

Wiest, C. J., and Butzel, Clark, McDonald, Potter, Sharpe, and Fead, JJ., concurred.