### OTTO MISCH CO. *v.* E. E. DAVIS CO.

### SOUTHERN SURETY CO. *v.* SAME.

1. APPEAL AND ERROR—FINDINGS OF COURT TAKE PLACE OF VERDICT BY JURY—NOT DISTURBED IF SUPPORTED BY EVIDENCE.
   In a case tried before the court without a jury, the court's findings of fact take the place of a verdict by the jury, and, ordinarily, on review, will not be disturbed if there is evidence in the record to support them.

2. GUARANTY—FINDINGS OF COURT SUPPORTED BY EVIDENCE.
   In an action for breach of guaranty in the construction of certain roofs, the findings of the court that they were not built according to the plans and specifications; that, because of defects in workmanship and materials they leaked, and that the repairs made thereto were necessary and were reasonably worth what was charged therefor, *held,* supported by the evidence.

[1]Appeal and Error, 4 C. J. § 2853; [2]Building and Construction Contracts, 9 C. J. § 245.

3. WAIVER—FAILURE TO OBJECT TO CONSTRUCTION OBVIOUSLY NOT COMPLYING WITH SPECIFICATIONS AMOUNTS TO WAIVER THEREOF.

Where work or materials is under the inspection of the owner or his architect during its progress, if the builder is not complying with the contract, it is the duty of the owner or architect to object to such work or materials as obviously do not comply therewith, and, on his failure to do so, the owner cannot, after the work is completed, claim that the work or materials was not in accordance with the contract.

4. SAME—WHERE OBJECTION MADE ON PART OF OWNER, PERMITTING WORK TO CONTINUE NOT A WAIVER.

Where the superintendent for the architect pointed out to the foreman and superintendent in charge of the con- struction of a roof that it was not being laid according to specifications, and was met with the statement that if the results were not right the owner had its remedy on the contract, permitting the work to continue after such protest and objection is not a waiver of compliance with the specifications or of the right to compensation for the defects.

5. SAME—ISSUANCE OF FINAL CERTIFICATE NOT A WAIVER OF DE- FECTS KNOWN TO EXIST WHICH WERE TO BE CORRECTED.

Where there was a guaranty of a roof intended to survive the approval and acceptance of the work, issuance by the architect of the final certificate for payment therefor, after an understanding with the surety that defects known to exist and objected to during the construction were to be corrected or paid for, did not constitute a waiver thereof, nor, under the circumstances, does the law imply one.

6. GUARANTY — WHERE THERE WAS MATERIAL DEPARTURE FROM SPECIFICATIONS, LIABILITY THEREFOR MAY NOT BE EVADED BY CLAIMING SUBSTANTIAL COMPLIANCE.

Where a contractor ignored the plans and specifications for the construction of a roof in material respects and followed a method of its own, notwithstanding protests on behalf of the owner, it may not evade liability for defects therein under its guaranty by claiming that there was a substantial compliance with the plans and specifications.

[3]Building and Construction Contracts, 9 C. J. § 138; [4]Id., 9 C. J. § 138; [5]Id., 9 C. J. § 138; [6]Id., 9 C. J. § 79.

7. SAME—OBLIGEE IN GUARANTY DOES NOT BECOME JOINT OBLIGOR
   BY SIGNING SAME.
   Where a subcontractor on a school building in writing
   guaranteed the work and materials used in the construc-
   tion of the roof, naming therein the contractor as obligee,
   the latter, by also inadvertently signing the guaranty and
   filing it with the school board, did not become a joint
   obligor to itself, and therefore the subcontractor may not
   avoid liability by claiming that an action thereon by the
   contractor may not be maintained because plaintiff and
   defendant are joint obligors.

8. DAMAGES—MEASURE OF DAMAGES FOR FAILURE TO COMPLY WITH
   SPECIFICATIONS.
   Where work is done under a written contract and speci-
   fications, and some of the work is defective, the contractor
   is liable only for the cost of such replacement as is
   necessary to make the work as good as was contemplated
   by the original contract and specifications.

Error to Wayne; Richter (Theodore J.), J.    Sub-
mitted October 19, 1927.    (Docket Nos. 47, 48.)    De-
cided January 3, 1928.    Rehearing denied February
14, 1928.

Separate actions of assumpsit by Otto Misch Com-
pany and the Southern Surety Company against the
E. E. Davis Company for breach of building contracts.
The cases were consolidated and heard as one.    Judg-
ments for plaintiffs.    Defendant brings error.    Re-
versed and remanded.

*Oxtoby, Robison & Hull* (*William McKinley* and
*Paul E. Price*, of counsel), for appellant.

*Monaghan, Crowley, Reilley & Kellogg*, for appellees.

McDONALD, J.    These two cases were tried together
in the court below and are here in the same record.
They will be disposed of in one opinion.    In the first
case, the plaintiff entered into a contract with the
board of education of the city of Detroit for the erection

---

[1]Actions, 1 C. J. § 90; [8]Building and Construction Contracts,
9 C. J. § 149; 39 L. R. A. (N. S.) 591.

of the Lynch schoolhouse. A guaranty was required that the construction of the roof, which was designed for a playground, should be in accordance with the plans and specifications, without defects in workmanship and materials, and would not leak for a period of ten years after completion. The plaintiff sublet the construction of the roof to the defendant, the E. E. Davis Company. The Davis Company furnished the required guaranty in the form of a letter directed to the plaintiff, which the plaintiff also signed and filed with the clerk of the board of education. After the roof was completed, leaks developed in many places. The defendant was notified but disclaimed any responsibility for the condition of the roof, on the ground that it had been constructed in accordance with the plans and specifications prepared by the architect of the board of education. The board made necessary temporary repairs and later laid an entirely new roof over that put on by the defendant. The Otto Misch Company was called upon to pay the amount so expended and did so. It then began this suit against the E. E. Davis Company to recover the amount which it had paid.

In the second case, the main facts are substantially the same. John Bollin Company secured a contract to build two schoolhouses, known as the Noble school and the Brady school. The Southern Surety Company was the surety on its bond. The roof construction was sublet to the E. E. Davis Company. A guaranty, similar to that in the Otto Misch Company case, was given and the work was performed, with the same results. The board of education made temporary repairs and the surety company reimbursed it and began this suit to recover the amount paid. The two cases were tried together by the court without a jury. Findings of fact and law were filed, on which judgments were entered in favor of both plaintiffs. The defendant has brought error.

The first question presented is that the findings are "against the manifest weight of the evidence."

"The law is well settled in this case that a trial judge's findings of fact take the place of a verdict by a jury, and ordinarily will not be disturbed if there is evidence in the record to support them." *Atlas* v. *Gunsberg Packing Co.*, 240 Mich. 141.

The findings complained of are, substantially, that the roofs were not built according to the plans and specifications; that, because of defects in workmanship and materials, the roofs leaked, and that the repairs made by the board of education were necessary and were reasonably worth what was charged therefor. It will not be necessary to detail the testimony which influenced the trial judge in reaching his findings on the facts. A brief reference to some of the evidence will suffice. Mr. Fred Laffrey was a witness for the plaintiff. He had 22 years of experience with work of this kind. He was superintendent and inspector for the architect while these roofs were being constructed by the E. E. Davis Company. He testifies that the plans and specifications were not followed, that he so informed the defendant's foreman and superintendent, and was told that they were following their own method and had guaranteed the results. He says that because of the manner in which they performed the work:

"When the thaw came in January we had lots of rain and one day I went up there and the people called me upstairs and we had four or five washtubs in the various rooms and large sections of the plaster were loosened and things were in bad shape from the leaks and the water came through, poured through."

His testimony was supported by that of other witnesses of equal credibility. On the part of the defendant, it is a significant fact that neither the superintendent nor foreman in charge of the work was

called to testify. The only witness who testified that the work was done according to the plans and specifications was Mr. Davis, the president of the defendant company. The plaintiff's testimony was ample and of such a quality as to leave no doubt that the trial judge arrived at a correct conclusion on the facts. There was not a substantial compliance with the plans and specifications.

But it is insisted by the defendant that the architect waived a compliance with the specifications because, with full knowledge of the fact that they were not being complied with, he permitted the defendant to continue the work, and, upon its completion, issued a final certificate to the general contractor.

"A waiver implies an intention to overlook a deficiency, or to forego a right to have the defect remedied or to have compensation therefor, and necessarily implies a knowledge of the defect that is waived, or acquiescence under circumstances reasonably implying unconditional acceptance of the work as a full performance." *Eaton* v. *Gladwell*, 108 Mich. 678.

In 9 C. J. p. 797, it is stated:

"So where the work or materials is under the inspection of the owner, or his architect, during its progress, if the builder is not complying with the contract, it is the duty of the owner or architect to object to such work or materials as obviously do not comply with the contract, and on his failure to do so the owner cannot, after the work is completed, claim that the work or materials was not in accordance with the contract."

Citing *Pennsylvania Rubber Co.* v. *Detroit Shipbuilding Co.*, 186 Mich. 305, in which case it was said:

"The defects complained of were obvious; and it has been held that if the defects are obvious, the failure to reject is equivalent to approval."

The specifications provided for the construction of

asphalt roofs, the bottom layer of which was to be five-eighths of an inch thick.   As laid by the defendant, it is claimed that it was one-half of an inch thick.   It was required that the top layer should overlap the joints of the lower layer.   As laid, the top layer did not overlap the joints of the lower layer. It was provided that the ingredients of the asphalt should be mixed in certain proportions.   There is testimony that, after leaks developed in these roofs, an examination of the asphalt disclosed that it had not been mixed according to the specifications; that it was spongy and porous and contained too much sand.   It is said that these are the defects which caused the roofs to leak.

The testimony is undisputed that, except as to the defect in the mixture of the composition, which was not obvious at the time, the defects were pointed out to the defendant's foreman and superintendent, but that they insisted on laying the roofs according to their own methods.   Mr. Laffrey, superintendent for the architect, testified:

"I told the foreman that he was not doing it right as soon as I got on the job.   They had put the first two squares on.   I was there the next day.   He was doing the same thing.   He told me that he was going to continue doing it and that was the way he had orders from his office to do it and, inasmuch as he was covered by a guaranty, I had no business to stop him. I knew it was not right according to the specifications."

Mr. Dupont, a witness for the plaintiff, was superintendent of construction at the Noble and Brady schools. He testified:

"The Brady school was started first by the Davis Company, and as they started I noticed that they were putting on a half inch of asphalt, the first coat, and I called their attention that it should be five-eighths of an inch in thickness.   To Mr. Davis and Mr. Davis informed me that they were putting it on according to their own method; that they had to stand back

of it, and with that I did not interfere or dictate how the roof was to be completed. I saw their work after that. They did not make any change; they completed one-half inch for the first coat. They put it that way all the way through."

The testimony is conclusive that there was a deliberate and substantial departure from the specifications by the defendant. Objections to the manner of performing the work were met with the statement that if the results were not right the owner had its remedy on the contract. Permitting the work to continue after protest and objection is not a waiver of compliance with the specifications or of the right to compensation for the defects.

In 9 C. J. pp. 797, 798, it is stated:

"But an acceptance under protest is not a waiver; and the mere failure of the owner to take charge of the prosecution of the work when he discovers that the builder is not complying strictly with the conditions of the contract does not waive his right to damages for defects."

As to the effect of the issuance of the final certificate for payment to the original contractors, the evidence is that the certificate was issued after an understanding with the surety companies that the defects were to be corrected or paid for. In this connection it should be remembered that there was a guaranty intended to survive the approval and acceptance of the work. In the circumstances, the law does not imply a waiver.

The next contention discussed by defendant's counsel in their brief is stated as follows:

"Where a contractor has substantially complied with the plans and specifications and the work does not accomplish the results for which it was designed, there can be no liability on the part of the contractor unless he has in express terms guaranteed the sufficiency of the plans and specifications and such intention must be clearly expressed in the contract."

A complete answer to this proposition is that in this case there was not a substantial compliance with the plans and specifications.    The defendant ignored them in some material respects and followed a method of its own.    It requires no further discussion.

It is also contended in behalf of the defendant that there can be no recovery because the instrument which is the basis of the action was an obligation in which plaintiffs and defendant were joint obligors.    The several guaranties are in the same language except as they refer to different schools.    That given in reference to the Noble school reads as follows:

"15 East Van Buren Street.
  Chicago.
    Phone Wabash 2020.

E. E. DAVIS
Incorporated

DESIGNERS AND CONTRACTORS
FLOOR CONSTRUCTION AND FLOOR
FINISH.

General Motors Building.
Phone Market 856.
Detroit, Mich.

October 31, 1921.

"JOHN BOLLIN COMPANY,
  1257-58 Book Building,
    Detroit, Michigan.

*Re* NOBLE SCHOOL.

"*Gentlemen:* We hereby guarantee the asphalt floors and asphalt roof laid in the Noble School—work performed in accordance with the specifications—that all work is without defect in workmanship and materials and that the roof will not leak for a period of ten years.

Yours very truly,
E. E. DAVIS COMPANY,
  By (Signed)   E. E. DAVIS.
JOHN BOLLIN COMPANY,
  (Signed)   E. J. BOLLIN."

It is apparent on the face of the instrument that this is not a joint obligation. We must look to the language of the entire undertaking to ascertain the intention of the parties. It is addressed by E. E. Davis Company to the John Bollin Company and is in the form of a letter. The John Bollin Company is the obligee. Was it the intention of the parties that the John Bollin Company should become bound to the John Bollin Company? There is nothing in the body of the contract or anywhere on the face of the guaranty to indicate that such an absurdity was intended. Were it not for the signature of the John Bollin Company at the bottom of the writing, it would be a simple guaranty by E. E. Davis Company alone. An explanation as to why and how the signature of the obligee came to be signed to the instrument was shown in the evidence without objection. The John Bollin Company had a contract with the board of education for the erection of this schoolhouse. It sublet the roof work to the E. E. Davis Company. This company prepared and mailed the guaranty in question to the John Bollin Company, which company later signed it and filed it with the clerk of the board of education. The guaranty was of no use to the board. It could not sue the E. E. Davis Company because the board was not a party to the contract and it was not made for its benefit. It was for the benefit of the Bollin Company, and the Bollin Company could maintain an action if its terms were breached. There is no merit in defendant's contention that the guaranty was a joint obligation.

The only other contention which merits discussion is that in regard to the measure of damages.

In their brief, counsel for the defendant say:

"We submit that the utmost for which the defendant, under the facts developed by this record, could be held liable to respond in damages would be the cost of temporary repairs, since the permanent repairs were

made after the board of education entirely abandoned
its proposed use of the roof designed and specified to
be built by the defendant and they designed a roof
for an entirely different purpose.   *   *   *   In design-
ing the new roof, the new specifications required the
former built by the defendant to be used as a base
and the new roof was built upon the roof theretofore
built by the defendant.   For this purpose the roof
thus built by the defendant was equally as valuable
as though it had been in perfect condition."

The applicable rule of law is well stated in *Drum-
mond* v. *Hughes*, 91 N. J. Law, 563 (104 Atl. 137).
We quote from the syllabus:

"Where work is done under a written contract and
specifications, and some of the work is defective, the
contractor is only liable for the cost of such replace-
ment as is necessary to make the work as good as was
contemplated by the original contract and specifica-
tions."

In the instant case, the defendant contracted to build
a roof that would not leak for a period of ten years
after completion.   He breached his contract.   There
were defects in the roof which caused it to leak.   The
defendant was under obligation to repair the defects
or to build an entirely new roof if necessary to make
it conform to the requirements of his contract.   If
he failed to do so, the plaintiffs had the right to make
the necessary repairs and charge the defendant there-
for.   But he was not obliged to pay for a new roof
if the roof he laid could be sufficiently repaired by re-
placing the defective parts.   He did not contract in
any event to build a new roof of different design and
according to different specifications.   In case of breach,
it was contemplated by the parties, when they entered
into the contract, that the cost of making the roof
comply with the plans and specifications would be
the measure of plaintiffs' damages.   So that these
so-called permanent repairs cannot be charged to the

defendant unless they were necessary to make good his contract.

The defects complained of as causing the roof to leak were due to the failure of the defendant to lay the second layer of asphalt so that it would overlap the joints in the first. When the condition of the roof was called to the defendant's attention, he denied responsibility and refused to make repairs. The architect engaged Mr. Mahon to make the repairs. Mr. Mahon is an expert roofer. Whether, in repairing the defects, he followed his own method or that of the architect, does not appear, but the architect testified that the method used would stop the leaks, and Mr. Mahon says it did stop them. The schools were occupied for a year or more before the permanent roof was put on. There is no evidence that it was put on because of leakage in the original roof. There is no evidence that the first roof was wholly defective and incapable of repair or that it was necessary to lay an entirely new roof in order to make it comply with the defendant's guaranty. The fact seems to be that the new roof was decided on not of necessity because of the defects in the old, but because it had become apparent that the old roof was not suitable for the purpose for which it was designed. The new roof was of different design, of simpler construction and less liable to develop leaks. It was a better and more permanent roof than the one originally designed. The board was entitled to have the defects complained of in the original roof replaced with material and workmanship in accordance with the original plans and specifications. The evidence shows that if this had been done the roof would have met the requirements of the defendant's contract. The expense of building the new roof was not necessary and cannot be charged to the defendant. On this record, the defendant is liable only for so-called temporary repairs.

A case differing somewhat as to its facts, but of in-

terest in the consideration of this question, is *City of Cleveland* v. *Walsh Construction Co.*, 279 Fed. 57.

The judgment is reversed, and the cause remanded to the circuit court with directions that a judgment be entered for the plaintiffs for the amount expended by the plaintiffs for temporary repairs. The defendant will have costs.

FLANNIGAN, C. J., and FELLOWS, WIEST, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice SNOW took no part in this decision.