## DIERICKX *v.* VULCAN INDUSTRIES.

1. CONTRACTS—BREACH—MEASURE OF DAMAGES.

   Damages allowable for breach of contract are designed to be compensatory only, placing the injured party in as good a position as he would have been in if performance had been rendered as promised.

2. SAME—BREACH—DAMAGES.

   Party breaching a repair contract cannot be accountable for items of subsequent repair, alteration, or correction, where the benefit to the nonbreaching party would exceed the benefit contemplated by the contract.

3. SAME — BREACH — SECOND CONTRACT — SAME BENEFIT — LARGER PRICE.

   A second more expensive contract to repair is not a bar to recover for breach of a first contract to repair if the later contract was to obtain the same result or benefit as that contemplated originally.

4. SAME—TERMS—PROMISE OF PERFORMANCE—BREACH—DAMAGES.

   Damages flowing from a breach of contract are determined by the terms of the contract and it is necessary to ascertain what the promised performance would have been but for the breach in order to determine the compensation which will put the injured party in as good a position as if performance had been rendered.

REFERENCES FOR POINTS IN HEADNOTES
   [1–4, 12] 13 Am Jur 2d, Building and Construction Contracts § 79; 22 Am Jur 2d, Damages §§ 46–54.
   Cost of correction or completion, or difference in value, as measure of damages for breach of construction contract. 76 ALR2d 805.
   [9, 11] 22 Am Jur 2d, Damages §§ 304–331.
   [10] 22 Am Jur 2d, Damages § 141.

5. SAME—DAMAGES—BASEMENT.
  Damages arising from failure to give plaintiff a basement free
    from seepage for 5 years, as promised by contract, are limited
    to the extent of making good on the promised result.

6. SAME—FAILURE—DAMAGES.
  Express warranty that basement would be waterproof for 5 years
    entitles plaintiff to freedom from seepage for that period only
    and he cannot obtain damages for cost of subsequent contract
    which results in greater benefit to him than that originally
    promised by defendant.

7. SAME—BREACH—FAILURE OF WARRANTY—MEASURE OF DAMAGES.
  Proper measure of damages for breach of contract, by failure of
    warranty to waterproof basement for 5 years, is the lowest
    cost of furnishing plaintiff a dry basement for period of the
    warranty.

8. SAME—WARRANTY—LIMITATIONS.
  Parties to a contract to waterproof a basement with a 5-year
    warranty are contracting for a 5-year result without any right
    of expectation of substantial structural or long-range benefits.

9. SAME—BREACH—EVIDENCE.
  Exclusion of evidence of costs of subsequent repair contract and
    its reasonableness, entered into by plaintiff to make good on de-
    fendant's failure to give plaintiff a waterproof basement for
    5 years as promised, held, error.

10. SAME—WARRANTY—BREACH—INCIDENTAL DAMAGES.
  One who contracts to stop a leak in a basement under a 5-year
    warranty of success is liable for incidental damages which
    follow from a breach of contract by failure of warranty.

11. SAME—BREACH—EVIDENCE—DAMAGES.
  Exclusion of evidence to show incidental damage arising while
    warranty was in effect, such as warped paneling and discolored
    tile in basement and loss of use and enjoyment of basement's
    recreation area resulting from failure of warranty that base-
    ment seepage would be stopped held, error.

12. SAME—BASEMENT WALL REPAIR—BREACH OF CONTRACT—DAM-
AGES.
  Failure to perform contract, made for sole purpose of repairing
    basement wall of plaintiff's home in such a way as to prevent

water from seeping through and to prevent further water damage to the home, which defendant implied would accomplish the desired result, rendered defendant liable for damages naturally arising from his breach.

Appeal from Common Pleas Court of Detroit; Rodgers (Julian P.), J.   Submitted June 6, 1967, at Detroit.   (Docket No. 2,428.)   Decided March 22, 1968.

Declaration by Thomas C. Dierickx against Vulcan Industries, a Michigan corporation, for breach of contract to waterproof a basement wall.   Judgment for plaintiff.   Plaintiff appealed contending damages were inadequate.   Reversed and remanded.

*William B. Cope,* for defendant.

*Robert E. DeMascio,* for defendant.

J. H. GILLIS, P. J.   This is an action for breach of contract.   Defendant, Vulcan Industries, is a corporation engaged in the waterproofing of basement walls by application of a "Nu-Miracle Process." By this process, defendant forces its material into and around the masonry thus effectuating a watertight bond without the necessity for excavating around the outside of the basement wall.

In March of 1954 Thomas Dierickx contracted with Vulcan to waterproof a certain portion of his basement wall.   The material terms of the contract were:

"Vulcan Industries, hereinafter called the contractor, proposes to furnish all material and labor necessary to waterproof the sub-soil masonry against seepage through the walls on building located at [plaintiff's address] using the patented

'Nu-Miracle process' without excavation, as per sketch below: [Sketch indicating one wall of plaintiff's basement]."

The contract further stated:

"Guarantee: We guarantee any area where we have applied our 'Nu-Miracle Process' against all seepage through the walls, providing that all areas or [sic] the sub-soil masonry is free of defective construction. For a period of five years."

The contract price was $100.

Water continued to seep into the basement and in April, 1956, at defendant's suggestion, a second contract was entered into for treatment of a larger area of the masonry. The printed terms of this contract were the same as the other with the sketch indicating the larger area to be treated. Written terms on this contract further provided that Vulcan was to "check grade" and also "seal at base where there isn't any paneling. If leaks where paneling is [sic] customer will remove and replace." The price was $130.

The seepage continued however. From 1956 to 1965 defendant and plaintiff tried various measures to seal the basement and during this period defendant made many service calls to the Dierickx house. Their efforts apparently were to no avail. In the late spring of 1965 defendant ostensibly gave up on the basement.

Plaintiff, in 1965, hired another contractor who controlled the seepage but only after breaking up a portion of plaintiff's driveway and excavating the outside of the basement wall. Suit was brought in the common pleas court for the city of Detroit, alleging defendant's breach of contract and seeking damages in the sum of $4,795. The bill of particulars

itemized the component elements of damage for
which compensation was sought:

| | |
|---|---:|
| Vulcan Industries | |
|      March 1954 .............. | $100.00 |
|      April 1956 .............. | 130.00 |
| Manuel Marchese ............ | 980.00 |
| Replace Drive .............. | 780.00 |
| Replace interior wall paneling | |
|   and damaged tile ........... | 805.00 |
| Compensation for personal inju- | |
|   ries and damage to property | |
|   stored in the basement ....... | 2,000.00 |
| | $4,795.00 |

The trial judge found that defendant breached
its contract and gave judgment for Mr. Dierickx in
the amount of $230, the amount he had paid to
Vulcan under the two contracts. Plaintiff appeals
solely on the issue of inadequacy of damages.

At trial, the plaintiff attempted to introduce evi-
dence to show the work performed by the second
contractor in support of a portion of his damage
claim. The trial judge ruled that while such evi-
dence would be proper in a suit based on negligence,
it was improper in a contract action. Plaintiff
maintained at trial, as he does here, that the damage
to property and the subsequent costs of excavation
all flow from defendant's breach and are properly
admissible in an action in assumpsit.

Since plaintiff on this appeal has questioned the
adequacy of the damages awarded to him, we must
determine what are the recoverable damages that
may arise out of a breach of a repair contract.
While the generally accepted rule regarding dam-
ages for breach is simply stated, application to
repair contracts has proven no small task.

On a broad view, the object and measure of com-
pensatory damages for breach is to "put the injured

party in as good a position as he would have had
if performance had been rendered as promised."
5 Corbin on Contracts, § 992, p 5. And in *Brodsky*
v. *Allen Hayosh Industries, Inc.* (1965), 1 Mich App
591, 597, 598, we said:

" 'Where a breach of contract occurs, the law
aims to make compensation adequate to the real
injury sustained, and to place the injured party,
so far as money can do it, in the same position he
would have occupied if the contract had been ful-
filled.' *Hammond* v. *Hannin* (1870), 21 Mich 374,
384."

In assessing damages for breach of contract the
breaching party is obliged to make good on the
promise. He cannot be accountable for items of
subsequent repair, alteration, or correction where
the benefit to the nonbreaching party would exceed
the benefit contemplated by the contract. Thus in
*Ciminelli* v. *Umland Bros., Inc.* (1932), 236 App Div
154 (258 NYS 143), defendant contracted to build
a new roof for plaintiff guaranteed for five years.
The new roof was faulty, leaked badly, and construc-
tion of another new roof was necessary. The plain-
tiff then contracted for a new roof which was guar-
anteed for 10 years. The appellate division reversed
the lower court's judgment awarding plaintiff the
full cost of the new roof (p 155):

"To be sure, even in proving the damages under
the correct rule, the proof of what it actually cost
to complete the work undertaken and left unfinished
or defectively done may be proved as some evidence
of the damage. *Kidd* v. *McCormick,* 83 NY 391;
*Mayor of New York City* v. *Second Ave. R. Co.,* 102
NY 572 (7 NE 905, 55 Am Rep 839). However, the
only evidence here offered related to the cost of a
ten-year roof to take the place of the five-year roof
which defendant undertook to build. Let us sup-

pose, for example, plaintiffs had elected to build a copper roof to remedy the condition caused by defendant's failure to build a five-year asphalt roof. Assuredly proof of the actual cost of such copper roof would not furnish a just measure of damage. While plaintiffs are entitled to as good a roof as defendant undertook to build, no matter how advantageous may have been the bargain they made with defendant, still defendant should not be called upon to pay the cost of a better roof than it contracted to build."

It is not a bar to recovery that the second contract was more expensive than the first, but only where the later contract was to obtain the same result or benefit as that contemplated originally. For instance, in *Scheppegrell* v. *Barth* (1960), 239 La 42 (117 S2d 903), the defendant contracted to paint the inside of plaintiff's house for $1,100. The paint peeled and flaked and the plaintiff hired another contractor to redo the job for $2,411, for which he sought to recover against the defendant. The Louisiana court allowed the damages, and stated (p 50) :

"In this case the work performed is worthless and must be completely redone. Plaintiff is entitled to be made whole and to claim the expense of repainting the interior of his residence.    *    *    *    According to the evidence, the lowest bid for this work amounted to $2,411, and defendant is liable to plaintiff in that amount."

The terms of the contract itself, entered into between these parties, determines the damages flowing from the breach. It is necessary to ascertain what the promised performance would have been but for the breach in order to determine the compensation which will put the injured party in as good a position as if performance had been rendered.

Vulcan Industries guaranteed the plaintiff a seep-free basement for 5 years wherever they applied their material. There is no claim in this case that defendant has improperly performed, that he was negligent, nor that he rendered his service in other than a good and workmanlike manner. The breach here was the failure of the warranty, the failure of defendant's plan to accomplish the expected result.[1]

What plaintiff bargained for, and what he did not receive, was a basement free from seepage for 5 years wherever defendant applied its process. Plaintiff did not bargain for any labor nor any materials, but only for the result guaranteed by defendant's plan. All damages therefore flow from the failure of the result under the warranty and are limited to the extent of making good on the promised result, *Carter v. State Farm Mutual Automobile Insurance Company* (1957), 350 Mich 535, 542; *Otto Misch Co. v. E. E. Davis Co.* (1928), 241 Mich 285.

Defendant is, in this case, the originator of his own liability. While the law only imposes a duty of performance in a good and workmanlike manner,[2] defendant has gone further and by the terms of its contract has expressly guaranteed the success of its endeavor for 5 years.[3] Thus under the contract plaintiff was entitled to freedom from seepage for 5 years, no more.

Plaintiff claimed damages for the cost of a subsequent contract which resulted in a greater benefit to him than that originally promised by defendant. Such a claim is not well founded. The trial judge,

[1] See for instance the interesting analogy presented in *MacKnight Flintic Stone Company v. City of New York* (1899), 160 NY 72 (54 NE 661); and by *Russ v. Lakeview Development, Inc.* (1954), 133 NYS2d 641.

[2] *Bellman Heating Company v. Holland* (1952, DC Mun App), 86 A2d 526; *George v. Goldman* (1956), 333 Mass 496 (131 NE2d 772); *Russ v. Lakeview Development, Inc., supra.*

[3] See *Shopping Center Management Company, Inc. v. Rupp* (1959) 54 Wash 2d 624 (343 P2d 877).

on the other hand, limited his damage to the contract price ($230). This is likewise an improper measure of damages. Defendant must respond in damages adequate to give plaintiff a seep-free basement for 5 years.

The proper measure of damages in this case is the lowest cost of furnishing plaintiff a dry basement for a period of the warranty. Two New Jersey cases warrant examination. In *525 Main Street Corp.* v. *Eagle Roofing Co., Inc.* (1961), 34 NJ 251 (168 A2d 33) defendant contracted to repair a roof on plaintiff's building and guarantee it against leaks for 5 years. The trial court found that the defendant had breached its contract and awarded plaintiff nominal damages. On certification to the New Jersey court, the opinion by Chief Justice Weintraub states (p 256):

"Since the purpose of a damage award is to give the claimant the benefit of the broken promise, we must first identify that benefit. The question is whether the parties bargained (1) for a 5-year result or (2) for work of greater expectable life but supported by a guarantee for a portion of that period. If roof work were involved with a life expectancy exceeding the period of the guarantee, the measure of damages might not be confined by the unexpired portion of the guarantee. Here, however, it is perfectly clear from the record that the parties bargained for a 5-year result—a roof which would serve as a roof for that period with the aid of such repairs as might occasionally be required, and we so find."

The court went on to find that at the point defendant breached its contract, the warranty had 2-1/2 years to run. Further findings indicated that at this time the roof still leaked badly and that plaintiff was justified in the extensive work he subsequently had done on the roof to make it water-

proof.   The question of damages proceeded from that basis (p 257):

"What is lacking is evidence that it would have been reasonable for plaintiff to contract for a 2-year result after defendant's default.   The point is more clearly made by assuming the 5-year guarantee had but one month to run.   Surely no one would contract for a one-month roof.   That course would involve unreasonable economic waste.   Indeed one might infer from the negotiations in 1955 that plaintiff's assignor regarded a 2-year result as an imprudent thing to buy since it rejected defendant's offer and bargained for a 5-year result for $9,800.   There is no point in pursuing further a discussion which on this record would be purely hypothetical, except to say that *if reason required the purchase of a result serviceable for more than the balance of the guarantee, defendant could not be chargeable with the entire cost.   Rather defendant would be chargeable with a portion of that cost prorated for the unexpired portion of defendant's guarantee unless the total circumstances should indicate the resulting figure should be modified.*

"However, the record is sufficient for a substantial judgment upon another formula of which surely defendant cannot complain.   The parties contracted for a 5-year result.   Plaintiff should at least receive a portion of the contract price paid to defendant, prorated for the balance of the 5-year period.   In the absence of other testimony as to damages, a proration makes sense.   It would be fair to the litigants, and that, after all, is the ultimate test of the correctness of an award.   If plaintiff is content with a judgment on that basis, the trial court shall so order on plaintiff's motion.   *If plaintiff, however, wishes to pursue the other approach based upon the cost of redoing the roof, it is entitled to that opportunity.*"   (Emphasis supplied.)

The second of the 2 cases we have referred to is *Price* v. *B. Construction Co.* (1962), 77 NJ Super

485 (187 A2d 25). This case involved a sale of a home by defendant builder with a warranty that for a period of 1 year the cellar would be free from water. Water accumulated in the cellar within the 1 year period, constituting a breach of contract by the builder. Plaintiff homeowner spent $2,561.18 to cure the trouble[4] and recovered this amount from defendant. Defendant appealed on the basis that since his guarantee was only for 1 year and the new drainage system is good for 50 years, his damages should only be 1/50th of the cost of the new system. The court held:

"Thus, applying the rationale of the *Eagle Roofing Case,* the question in the instant case is whether the parties bargained (1) for a one-year result, or (2) for work of greater expectable life but supported by a guarantee for a portion of that period. We find that the second alternative is the more reasonable understanding of the warranty before us. It would be unrealistic to conclude that plaintiff buyers of a new $43,000 home were bargaining for a one-year result—a cellar that would be free from water for only one year. Unlike a roof which has a limited life due to its exposure to the elements, the cellar of a new house that remains free from water for one year after its construction might reasonably be expected to remain free from water indefinitely thereafter. We think it clear that the parties here assumed that if there were defects in the construction of the house which would allow water to seep into the cellar, that condition would

---

4 "It cost plaintiffs $2561.18 to cure the water condition in the cellar. This included $2111.18 for a new drainage system, $200 for surveying and engineering fees, and $250 for re-sodding and top-soiling. There was testimony that the new drainage system would be good for the life of the building, or at least 50 years. Plaintiffs' witnesses established that the work done was necessary and the charges therefor were reasonable. The cause of the water condition was attributed to defendant's failure to provide outlets for the footing drains. Defendant offered no proof that an adequate remedy could have been effected in a more economical way, or that the cost of the work actually done was not reasonable." (p 487.)

reveal itself within one year after completion of the house and that it was therefore reasonable to limit the period of the guarantee to one year.

"In other words, if the condition did not arise within the year, defendant would be free from liability. But if the condition did arise within the year, defendant would be obligated for the fair and reasonable expense of rendering the cellar free from water, even though a proper job for that purpose would keep the cellar water-free indefinitely thereafter, as is generally the case.

"Thus, when plaintiffs' cellar developed the water condition during the one-year period, the responsibility for eliminating it devolved on the defendant under its warranty. It failed to deliver what it had promised, and refused thereafter to abide by the contractual obligation. The cost reasonably incurred by plaintiffs in correcting the situation was $2561.18. Keeping the cellar free from water even for the one-year period would have entailed the same expense because the fault, as deduced from the evidence and the verdict, lay in defendant's original failure to provide outlets for the footing drains and the work done was the only way the fault could be corrected. Accordingly, the measure of damages fixed by the trial court was proper."

We are satisfied that in the present case the parties contracted for a 5-year result without any right of expectation of substantial structural or long range benefits. Testimony should have been allowed as to the costs of the subsequent excavation contract and findings should have been made as to the expected life of the excavation job as well as when defendant's warranty began to run and what period remained unexpired.

Moreover, it is clear that one who contracts to stop a leak under such a guarantee of success will at least contemplate that if he fails incidental damage may follow from the continuation of the leak.

Plaintiff claims such injury did in fact follow by virtue of warped paneling, discolored tile and loss of use and enjoyment of the basement recreation area. Testimony should have been permitted as to the extent of these damages occurring by virtue of defendant's failure, which occurred while the warranty was in effect.

As to the damage occasioned by the continuation of the leak, an analogous case is *Orkin Exterminating Company, Inc., of South Georgia* v. *Buchanan* (1963), 108 Ga App 449 (133 SE2d 635). Plaintiff there was an owner whose home was infested with powder post beetles, which threatened to undermine the entire wooden substructure. Defendant was hired to exterminate the beetles, under what the court found was a guarantee of success. Defendant was not successful and subsequent damage ensued as a result of the remaining vermin. Plaintiff brought the action in breach for the cost of replacing a large portion of the woodwork in his home. The Georgia court affirmed plaintiff's judgment, holding at pp 452, 453:

"The defendant's agent, who entered into the contract with the plaintiff, testified that he guaranteed plaintiff that defendant would control the beetles and keep them from spreading and eating up his house. The only reasonable construction of this agreement is that if subsequently to the treatment by the defendant of plaintiff's premises, damages resulted on account of powder post beetle infestation, the defendant would be liable to the plaintiff for the reasonable cost of repairs necessitated on account thereof. * * *

"The sole purpose for which the plaintiff entered into such a contract with the defendant and agreed to pay the defendant any sum of money for the performance by the defendant was to prevent further damage to his home resulting from the activities of

powder post beetles. This is substantiated by the testimony of the defendant's agent who entered into the contract on its behalf. The agreement between the parties, if it did not expressly so provide, fairly implied that the defendant would accomplish the desired results for the plaintiff. The failure of the defendant to perform the contract rendered it liable for such damages as naturally arose according to the usual course of things from the breach. These damages were such as the parties contemplated when the contract was made would probably result from its breach. * * *

"The trial court properly permitted the plaintiff to introduce evidence of the cost of repairing his house."

Plaintiff should have an opportunity to introduce evidence of his damages such as we have indicated. On remand the trial judge should make a determination of the reasonableness and necessity of the subsequent excavation in securing the bargained for 5-year result.[5]

Reversed and remanded for further proceedings consistent with this opinion.

McGREGOR and THORBURN, JJ., concurred.

---

[5] Damages evidenced by costs of later repairs must entail such a factual finding. *Otto Misch Co.* v. *E. E. Davis Co.* (1928), 241 Mich 285; *Wigginton* v. *Globe Construction Co.* (1953), 223 La 695 (66 So 2d 613); *Sartori* v. *J. H. Hunter* (1963 La App), 158 So 2d 457.