*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRENT SITTO,

        Plaintiff-Appellant,

v

KIMBERLY W. STOUT, PC, and
KIMBERLY W. STOUT,

        Defendants-Appellees.

UNPUBLISHED
March 12, 2025
12:02 PM

No. 370798
Oakland Circuit Court
LC No. 23-204497-CK

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(4). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts relevant to the issues on appeal in this case are simple and undisputed. In 2020, plaintiff, a licensed attorney, was charged with federal crimes in the Eastern District of Michigan. Plaintiff hired an attorney from the Hertz Schram law firm to represent him, and shortly thereafter plaintiff hired defendants as well. Plaintiff and defendants signed an engagement agreement in December of 2020; it provided in relevant part:

> **Scope of Engagement.** The scope of this representation will be representing you together with co-counsel through resolution of the above matter, short of trial. We have agreed that the fee is non-refundable in its entirety. Regardless of how much or how little work is done with regard to the Scope of Engagement, the fees Payor remits to the Firm are non-refundable in their entirety. Payor and Client understand that the Firm is being hired to immediately begin work on this matter and keep itself available to follow up on the work. The Firm may have to turn down other work to do so. The non-refundable nature of the fees reflect this risk and this possibility. The parties have discussed that under no circumstance will any fees be returned. Payor represents that she has discussed this with Client.

-1-

In addition to the reasons described here, other reasons for the non-refundable nature of the fee are because, among other things, 1) a federal offense case involves a lot of work, 2) with each newly retained case, the Firm has less time to devote and less capacity to handle other cases, 3) scheduling issues, and, 4) possible future conflicts of interest that could prevent the Firm from future representations. All funds will be immediately deposited into the Firm's business accounts.

\* \* \*

**<u>No Guarantees or Promises.</u>** The Firm will act zealously on Client's behalf but there are no guarantees nor promises made as to the probable or likely outcome in this matter or the method or manner in which the case will be handled. By signing below, you agree that no promises or guarantees have been make [sic] with regard to the outcome in this matter.

The engagement agreement additionally provided that although defendants generally charged an hourly rate for their time, they would "serve as counsel in the capacity described above in the Scope of Engagement for the following flat fee: Kimberly W. Stout      $15,000.00."

The federal charges against plaintiff were dismissed in October 2023. In December 2023, plaintiff filed suit in the trial court against defendants, alleging claims for breach of contract, fraud in the inducement, innocent misrepresentation, unjust enrichment, common-law and statutory conversion, and rescission. Defendants moved for summary disposition under MCR 2.116(C)(4), arguing that the trial court lacked subject-matter jurisdiction over plaintiff's claims because the amount in controversy did not meet the trial court's jurisdictional minimum. The trial court held a hearing on defendants' motion in April 2024. After the hearing, the trial court granted defendants' motion in a written opinion and order. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Meisner Law Group, PC v Weston Downs Condo Assoc*, 321 Mich App 702, 713; 909 NW2d 890 (2017) (citation omitted). We also review de novo jurisdictional questions under MCR 2.116(C)(4). *Id*.

MCR 2.116(C)(4) permits a trial court to dismiss a complaint when "[t]he court lacks jurisdiction of the subject matter." A motion under Subrule (C)(4) may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(2). When affidavits, depositions, admissions, or other documentary evidence are submitted with a motion under MCR 2.116(C)(4), they "must be considered by the court." MCR 2.116(G)(5). So, when reviewing a motion for summary disposition brought under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact. [*Id*. (citations omitted).]

III. ANALYSIS

Plaintiff argues that the trial court erred by determining that it lacked subject-matter jurisdiction, and accordingly by granting defendants' motion for summary disposition under MCR 2.116(C)(4). We disagree.

Michigan's Constitution provides that circuit courts are courts of general jurisdiction, and permits the Legislature to establish other courts of limited, exclusive jurisdiction. See Const 1963, art. 6, § 1. The Legislature, in turn, established the districts court as courts of limited, exclusive jurisdiction over, *inter alia*, civil actions "when the amount in controversy does not exceed $25,000." MCL 600.8301(1); see also MCL 600.605. Therefore, the circuit courts do not have jurisdiction over matters that fall within the district courts' exclusive jurisdiction. *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 560; 840 NW2d 375 (2013).

"Michigan's judiciary have long held that the circuit court is not deprived of subject-matter jurisdiction when a plaintiff claims damages in excess of the jurisdictional amount but the judge or jury returns a verdict of an amount less than the jurisdictional limit." *Meisner*, 321 Mich App at 716. But, for the purposes of a challenge to a court's subject-matter jurisdiction, the amount in controversy is not determined merely by reference to the amount claimed in the complaint; rather, "when reviewing a motion under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the circuit court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there is no genuine issue of material fact concerning provable damages." *Id*. at 718 (citation omitted). Put another way, "[a]lthough a plaintiff may claim damages in excess of $25,000, when the documentary evidence submitted to the circuit court shows by undisputed facts that the plaintiff's claim to damages exceeding the jurisdictional amount cannot be proved, summary disposition under MCR 2.116(C)(4) is proper." *Id*. at 719. Additionally, although "courts do not require absolute certainty from the parties when calculating the amount in controversy," *ABCS Troy, LLC v Loancraft,* LLC, 337 Mich App 125, 139; 972 NW2d 317 (2021), a plaintiff may not offer mere speculation and conjecture in response to a motion under MCR 2.116(C)(4), *Meisner*, 321 Mich App at 722-723 (citations omitted). "The mere possibility that a claim might be supported by evidence at trial is insufficient" to survive summary disposition under MCR 2.116(C)(4). *Meisner*, 321 Mich App at 723 (citation omitted).

In this case, plaintiff filed a complaint against defendants containing seven counts, alleging that defendants were liable to plaintiff for breach of contract, fraud in the inducement, innocent misrepresentation, unjust enrichment, common-law conversion, and statutory conversion, as well as a claim for rescission. All of the counts were based on the same alleged conduct by defendants—allegedly accepting $15,000 from plaintiff for legal services and then not providing any services or returning the money. Regarding the breach of contract claim, apart from the loss of the $15,000, plaintiff alleged that he had incurred money damages as a result of (1) having to pay co-counsel to perform legal work that plaintiff had expected defendants to perform, (2) having to seek out additional legal representation, and (3) having to hire the Haney Law Group at an additional cost of $25,000. Regarding the fraud in the inducement claim, plaintiff alleged that he had incurred damages from emotional stress and anxiety, in addition to the three sources of damages alleged under the breach of contract claim. Plaintiff alleged no specific additional damages beyond the $15,000 in relation to the innocent misrepresentation, unjust enrichment, and

common-law conversion claims. Plaintiff sought treble damages under the statutory conversion claim, totaling $45,000. And plaintiff's claim for rescission requested that the trial court order defendants to return plaintiff's $15,000. Each claim also generally sought costs, interest, and reasonable attorney's fees.

For the purposes of this appeal, plaintiff's claims can be divided into two categories: (1) breach of contract, and (2) tort claims (fraud in the inducement and statutory conversion).[1] We will consider each in turn.

## A. CONTRACT CLAIM

Plaintiff argues that the trial court erred by determining that it lacked subject-matter jurisdiction, because plaintiff alleged consequential damages that arose naturally from defendants' breach of contract. We disagree.

A fee agreement between an attorney and a client is a contract, and therefore subject to the law of contracts. *Wasenko v Auto Club Group*, 347 Mich App 635, 639-640; ___ NW3d ___ (2023) (citations omitted). Damages for breach of contract can include consequential damages, if they arose naturally from the breach or were in contemplation of the parties at the time the contract was made. *Lawrence v Will Darrah & Assoc, Inc*, 445 Mich 1, 6; 516 NW2d 43 (1994). However, damages that arise naturally from the breach of a commercial contract are generally limited to the monetary value of the contract had the breaching party fully performed under it. *Id*. at 6 (quotation marks and citation omitted). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601-602; 865 NW2d 915 (2014). A breaching party to a contract may be liable to the other's party's reasonable efforts at mitigating a loss caused by the breach. See *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 538-539; 854 NW2d 152 (2014).

In this case, plaintiff does not allege that the parties explicitly contemplated his claimed damages at the time the contract was formed, but argues that they naturally flowed from defendants' alleged breach. Plaintiff alleges, in essence, that he paid defendants for $15,000 worth of legal representation, defendants did not provide that representation, and as a result, plaintiff was required to (1) have co-counsel perform (and presumably bill for) work that defendants should have done, (2) spend time finding replacement representation and (3) ultimately hire another law firm for an additional $25,000.[2] Regarding the work performed by plaintiff's co-counsel, we note that, while plaintiff has provided a list of the amounts billed by Hertz Schram, plaintiff has not identified those amounts that were incurred as a result of defendants' alleged failure to provide

---

[1] We need not further consider, for purposes of this appeal, plaintiff's claims for innocent misrepresentation, unjust enrichment, or common-law conversion, because plaintiff does not argue that they asserted the requisite amount in controversy. We also need not consider plaintiff's rescission claim, because plaintiff expressly disclaims it as an issue on appeal.

[2] Plaintiff does not allege that the actual outcome of the proceedings against him was affected negatively by defendants' alleged breach; rather, he merely alleges that he paid defendants for legal work and that defendants failed to perform any such work.

representation; additionally, the engagement agreement indicates that plaintiff agreed to pay defendants "[r]egardless of how much or how little work is done" and that defendants made no guarantees regarding "the method or manner in which this case will be handled." Regarding the expenses incurred in seeking new representation, plaintiff only states that he incurred "mileage and additional amounts meeting with other attorneys" and provides a credit-card receipt for forty dollars at a restaurant, which plaintiff claims represents a meeting with Steven Haney prior to retaining the Haney Law Group.

More importantly, plaintiff has not even alleged that he was unable to find adequate replacement legal services for less than $25,000, or that the $25,000 paid to the Haney Law Group was entirely paid to replace services that defendants should have provided. A breaching party cannot be held liable for the cost of a substitute contract that goes beyond the originally intended result. See *Dierickx v Vulcan Indus*, 10 Mich App 67, 71-74; 158 NW2d 778 (1968). And our Supreme Court has stated, in the context of medical malpractice claims, that "the client cannot recover *any* and *all* fees that the client incurred in attempted mitigation." *Hark Orchids, LP v Buie*, ___ Mich ___; ___ NW3d ___ (2024); slip op at 9. Rather, the client can only recover attorney fees incurred in attempted mitigation if they were reasonable and necessary to mitigate the harm from malpractice." Simply put, in this case plaintiff has provided no explanation for why $15,000 worth of legal work had to be replaced with $25,000 worth of legal work, especially when the contract with defendants indicates that the parties had considered the possibility that defendants would provide little or no legal work, and the proceedings against plaintiff were ultimately resolved successfully.

In sum, plaintiff has not provided any evidence in support of his claim that he incurred more than $10,000 in consequential damages (beyond the $15,000 paid to defendants) as a result of defendants' alleged breach of contract. The mere possibility that these claims might be supported by evidence at trial was insufficient to vest the trial court with subject-matter jurisdiction. *Meisner*, 321 Mich App at 723.

## B. TORT CLAIMS

Plaintiff also argues that two of his tort claims alleged sufficient damages to meet the trial court's jurisdictional limits: his fraud in the inducement claim and statutory conversion claim. We disagree.

Plaintiff's fraud in the inducement claim is based on defendants' alleged failure to perform under a contract. A cause of action brought on the basis of a defendant's failure to perform its contractual obligations generally sounds in contract, not tort. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 171; 809 NW2d 553 (2011). However, a noncontracting plaintiff may establish that a defendant owed them a legal duty that "arises separately and distinctly from the contractual agreement" and breached that duty with a "wrong independent of a contract." *Loweke*, 489 Mich at 169, 171.

In this case, although plaintiff is a contracting party, he argues that his complaint alleged that defendants breached ethical duties owed to plaintiff separate from the duties under the engagement contract. It is true that his complaint alleges that defendants owed professional, fiduciary, and ethical duties to plaintiff aside from the duties that arose under the contract.

However, the actual tortious conduct plaintiff alleges defendants to have engaged in is all based on the language from the engagement agreement—plaintiff asserts that defendants made false statements in the agreement concerning their future conduct, and that they did not perform. These claims sound in contract, not tort. See *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365, 373-375; 532 NW2d 541 (1995) (holding that when alleged "misrepresentations relate to the breaching party's performance of the contract" they "do not give rise to an independent cause of action in tort" and the plaintiff "may only pursue a claim for fraud in the inducement extraneous to the alleged breach of contract").

Additionally, if we assume for the sake of argument that defendants did owe plaintiff unrelated duties and breached those duties, plaintiff has not shown additional damages that would meet the trial court's jurisdictional limit. As stated, plaintiff's fraud in the inducement claim recited the same damages as plaintiff's breach of contract claim, along with damages for emotional stress and anxiety. Plaintiff has never even estimated the amount of damages incurred for alleged emotional stress and anxiety and, as stated, the other claimed damages are insufficient to vest the trial court with subject-matter jurisdiction. *Meisner*, 321 Mich App at 723.

Regarding plaintiff's statutory conversion claim, again, we conclude that it is based on defendants' alleged failure to perform under the contract. Plaintiff would only be entitled to a refund of his $15,000 if defendants failed to live up to their end of the bargain—in other words, defendants could only "convert" that money if they did not earn it by performing under the contract. So for the reasons already stated, we conclude that this claim sounds in contract, not tort. *Loweke*, 489 Mich at 171.

Moreover, even if we did conclude that plaintiff's claim for statutory conversion stood as an independent tort claim, plaintiff has not shown entitlement to treble damages. Plaintiff argues that pleading the availability of treble damages under MCL 600.2919a(1) is sufficient to meet the trial court's jurisdictional limit. We disagree. Again, in the context of a motion under MCR 2.116(C)(4), we must look beyond the claimed damages to determine if there is a genuine issue of material fact concerning whether they can be proved. *Meisner*, 321 Mich App at 723.

At common law, "conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015). Refusing to return property to its owner upon demand can constitute conversion. *DHHS v NRK RX, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024); slip op at 4. In addition to the elements of common-law conversion, statutory conversion requires that the conversion was to other person's "own use." *Aroma Wines*, 497 Mich at 357. This requires "a showing that the defendant employed the converted property for some purpose personal to the defendant's interests." *Id*. at 359.

In this case, plaintiff does not dispute that the $15,000 was paid to defendants as part of an agreement for legal services. Plaintiff also alleged that defendants placed the funds in a business account, rather than a client-trust account. But the engagement agreement that plaintiff signed specified both that no refunds would be given and that the funds would immediately be deposited into the firm's business accounts. Therefore, when the funds were received by defendants and deposited, defendants had the right, under the engagement agreement, to do so—they did not wrongfully exert dominion over plaintiff's property. Plaintiff did additionally allege that he had

-6-

requested a refund, which defendants refused. But even assuming that refusal constituted an act of *common-law* conversion, plaintiff only made the conclusory allegation that defendants converted the $15,000 for their own use, without any specifics regarding that use. Without more, the record does not show a genuine issue of material fact concerning these damages. *Meisner*, 321 Mich App at 723.

Affirmed. As the prevailing parties, defendants may tax costs. MCR 7.219(A).


/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney