MARY JOHNSON, EXECUTRIX OF THE ESTATE OF JAMES P. JOHNSON, DECEASED, PLAINTIFF-RESPONDENT, v. EUGENE HOFFMAN, DEFENDANT-APPELLANT.

Argued April 9, 1951—Decided May 14, 1951.

124

*Mr. Ryman Herr* argued the cause for the appellant (*Messrs. Herr & Fisher,* attorneys).

*Mr. Jerome Alper* argued the cause for the respondent (*Mr. Maurice M. Bernstein,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. James P. Johnson of Bucyrus, Ohio, was a seller of livestock and by telephonic communication sold four shipments of cattle to the defendant Hoffman, of Flemington, New Jersey, during the fall of 1946. Of these shipments three were accepted and paid for by the defendant, but no cash payment was made for the shipment of October 30, 1946. Two of the shipments were made prior to and one after that of October 30. At the time when the plaintiff shipped the carload which is in issue in his complaint the defendant then owed the plaintiff for the immediately

preceding shipment. Defendant, after receipt of the shipment of October 30 paid for the prior shipment and also one made later on November 4.

On February 16, 1949, Johnson brought suit in the Superior Court, Law Division, Somerset County, in three counts: book account, express contract and *quantum valebat* as to the October 30 shipment. Defendant's answer amounted to a general denial together with a separate defense setting up that whatever money may have been owed to the plaintiff had been paid by credits allowable on the other shipments. The answer contained a counterclaim in five counts in which the defendant alleged certain representations and warranties had been made by Johnson respecting all of the shipments, *i. e.*, that the cattle were marketable, in good condition and fit for resale, and asserted an account stated indicating a balance due the defendant. The last count contained this significant language: "When each of the aforementioned loads of cattle arrived the said defendant contacted said plaintiff, complained of his failure to meet the required specifications and was instructed by said plaintiff to accept said cattle and livestock, to sell same and that he would credit on said book account the loss which he sustained by reason of the fact that said cattle did not meet the required specifications."

Plaintiff's reply consisted of admissions and denials and these separate defenses to the counterclaim: (1) that the sales were made free of any warranties; (2) that the plaintiff had waived any right to plead breach of warranty because of his actions with respect to the shipments subsequent to the receipt thereof, and (3) a denial of any agreements whereby plaintiff was to make any allowances or give any credits to the defendant against any of the shipments.

On October 29, 1949, Johnson died and his widow, the executrix of his estate, was substituted as party plaintiff.

A trial of the issues was had on November 6, 1950, whereat the plaintiff's bookkeeper testified that from the decedent's books there was due from the appellant on the

sale of 64 calves, the sum of $3,301.65. The invoice was marked in evidence and contained the following provisions as to warranty:

"3. Seller does not warrant said animals as free from disease or assume any responsibility whatever for death or loss of said animals subsequent to delivery.
4. It is expressly agreed that no representations or warranties other than those herein contained have been made by the Seller."

The plaintiff then rested. The defendant, in attempting to prove his case on answer and counterclaim, attempted to prove certain conversations he had with the plaintiff's decedent subsequent to the delivery of the cattle at the railroad siding in Flemington. The trial court ruled out such conversations as being in violation of *R. S.* 2:97-2 which prohibits testimony as to transactions with the decedent unless the representative of the decedent first offers himself as a witness on his own behalf and testifies to any transaction with or statement by his testator or intestate.

On completion of the appellant's case respondent moved for a judgment and for a dismissal of defendant's counterclaim. Both motions were granted and judgment was entered accordingly. The defendant appealed to the Appellate Division and we certified the cause here on our own motion.

Appellant first urges that the trial court erred in prohibiting the testimony of the defendant concerning matters which the decedent could not contradict of his own knowledge if living. His contention is that he was entitled on his defense and counterclaim to show the defective and nonconforming condition of the cattle shipped by the respondent's testator.

■■ Apparently at the trial respondent elected to proceed upon the count in the complaint based upon a book account and for that purpose proved the book account of the decedent with the appellant, together with the invoice. Having done that she had established a *prima facie* case. Books of account properly admitted into evidence are legitimate *prima facie* evidence to show the sale and delivery of the

merchandise in question in the usual course of business. *Oberg v. Breen,* 50 *N. J. L.* 145 (*E. & A.* 1887); *Bayonne v. Standard Oil Co.,* 81 *N. J. L.* 717 (*E. & A.* 1910); *Benoliel v. Homack,* 87 *N. J. L.* 375 (*Sup. Ct.* 1915).

A representative of a decedent may offer books of account of his decedent to prove a cause of action, and an offering of such evidence is not considered such a "testifying" by the representative as amounts to a waiver under the statute so as to permit the surviving opponent to take the stand against him. The question is not without some difficulty, but the prevailing weight of authority establishes such a proposition. 5 *Wigmore on Evidence* (*3rd ed.*), secs. 1554, 1559, 578, 1519; 70 *C. J.,* sec. 456, *p.* 343; 58 *Am. Jur., p.* 166; 3 *Jones on Civil Evidence* (*4th ed.*), sec. 791, *p.* 1452. Contrariwise, the surviving party may offer his books of account as against a deceased opponent. See also 6 *A. L. R.* 756. The underlying reason is that such was the practice at common law when the rule was that no party to an action could be a witness in the cause, yet books of account were offered on both sides out of necessity, supported by a suppletory oath. 3 *Blackstone, p.* 370. So whenever an administrator testifies in this way he exercises a common law right and consequently makes no election under the statute. *Stevens v. Moulton,* 68 *N. H.* 254, 38 *A.* 732 (1895). The history of *R. S.* 2:97–2 and its introduction into our statute law is set forth in *Berkowitz v. Pierce,* 129 *N. J. L.* 299, at *p.* 300 (*Sup. Ct.* 1943).

With these principles in mind we address ourselves to the action of the trial court in dismissing the counterclaim. Admittedly no express warranties were made as to any of these sales except as set out above. Stripped down to fundamentals, the defendant's position as set out in his pleadings, as to the three shipments other than the one involved in the complaint here was: I ordered several carloads of cattle from James P. Johnson; on arrival I inspected them and found they were not in a merchantable condition or as ordered; nevertheless I accepted them and paid for them. While Johnson un-

doubtedly knew the purpose for which the defendant bought the calves and there was an implied warranty that they would· be reasonably fit for such purpose and merchantable, *R. S.* 46:30–21(1) (2), paragraph 3 of that section provides that if the buyer of the goods has examined them there is no implied warranty regarding defects which such examination would reveal.

The statute likewise sets forth and defines the conditions under which goods are accepted by the buyer or the contract rescinded in situations as are here presented. The following provisions are applicable:

"46:30–54. Acceptance by buyer

The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

"46:30–55. Effect of acceptance

In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

"46:30–75. Remedies for breach of warranty.

\* \* \* \* \* \* \* \*

(3) Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale."

Running through these three sections is the provision that before a buyer can exercise his remedy for the breach of an implied warranty he must notify the seller within a reasonable time of his election to rescind the contract. The ap-

pellant attempts to say that he complained to Johnson about the condition of the cattle on their arrival and as a result of what Johnson told him he accepted and paid for them, but the difficulty is that this testimony is not admissible because it is a conversation with the deceased, and therefore barred by the provision of *R. S.* 2 :97–2, since the representative of the decedent did not take the stand to testify as to any part of these transactions. True, the Sales Act does not prescribe. that the notice be in writing or in any particular form, but the prohibition of *R. S.* 2 :97–2 precludes the appellant here from testifying.

The result is that there is no proof in the records of any notice of a breach of warranty within a reasonable time after the buyer knew or ought to have known of the breach, and where there is no proof of such notice the Sales Act provides that the seller shall not be liable. *Bass v. Bellofatto,* 96 *N. J. L.* 320 *(Sup. Ct.* 1921) ; *Cf. Vapor Vacuum Heating Co. v. Kaltenbach, et. al.,* 94 *N. J. L.* 450 (*E. & A.* 1920).

So, on the proofs as they stand, the appellant did not rescind the contracts but kept the calves; being aware of their condition and the fact, if true, that they were not as ordered, he nevertheless exercised dominion over them by disposing of them.

Applying ourselves to the record before us as it pertains to the respondent's action to recover for the shipment of October 30, 1946, the only testimony that got into the record relating thereto was whether or not appellant had paid for them. He claimed he had done so by allowances due him from other shipments. This testimony obviously is in contravention of the provisions of *R. S.* 2 :97–2 and the appellant-buyer is in the further unfortunate position that he cannot show the payment by proving his own books of account. *Oberg v. Breen, supra; Inslee v. Prall,* 23 *N. J. L.* 457 *(Sup. Ct.* 1852) ; affirmed 25 *N. J. L.* 665 (*E. & A.* 1856).

The appellant asserts error in the refusal of the trial court to permit him to show a "custom" existing in the cattle business when he asked the following question : "What is the

custom of the cattle trade in ordering cattle in the normal course of the cattle business?" An objection was made on the ground of immateriality, which was sustained. The question was clearly objectionable. It assumed a custom existed and was not based on the facts of the case. The answer and counterclaim invoked no warranty by custom or usage, nor was the point encompassed in the pretrial order.

Where a custom is relied on to explain a contract, it must be specially pleaded. *Society for Establishing Useful Manufactures v. Haight,* 1 *N. J. Eq.* 393 (*Ch.* 1831); *Overman v. Hoboken City Bank,* 30 *N. J. L.* 61 (*Sup. Ct.* 1862), or be included by the pretrial order by amendment to the pleadings. *Jenkins v. Devine Foods, Inc.,* 3 *N. J.* 450 (1950); *cf. Carlson v. Hannah,* 6 *N. J.* 202, 215 (1951). This is particularly true where the custom is relied on to aid in the interpretation of the contract or to explain the terms of the contract, where permitted under the parol evidence rule. See 1 *Williston on Sales* (*Rev. ed.*), sec. 246. The alleged custom, if pleaded, must then be clearly established and must be known to the parties or be so notorious in the trade as to charge them with notice thereof. *Public Service Mutual Insurance Co. v. White,* 4 *N. J. Super.* 523, 527 (*App. Div.* 1949); *Matarani v. Reading Co.,* 119 *N. J. L.* 43, 45 (*E. & A.* 1937). For these reasons the question was properly overruled.

Again, it is said the trial court committed error in its refusal to permit a witness, Parozzi, who was engaged in the trucking business, to testify as to the condition of the cattle contained in the October 30 shipment. The ground of the objection and the basis of the court's ruling do not appear, but we can surmise from the whole record that the court felt it would contravene the provisions of the Evidence Act relating to testimony concerning a transaction with a decedent. Parozzi was not a party and the statute by its own language applies only to parties, *Cullen v. Woolverton,* 65 *N. J. L.* 279 (*E. & A.* 1900); *Kapalczynski v. Sitniski,* 91 *N. J. Eq.* 524 (*E. & A.* 1920).

We think it was prejudicial error to exclude any and all testimony by this witness as to the condition of the 64 calves on arrival, for the reason that if four or five of the calves were dead on arrival or died after arrival or had to be destroyed shortly thereafter, then the plaintiff could not recover the full amount shown on his *prima facie* case on the book account which had established that the buyer owed him for 64 calves weighing 14,355 pounds at a price of 23 cents a pound, making a debt of $3,301.65 plus commission of $12, or a total of $3,313.65, to which would be added interest and costs.

In the absence of an express contract provision or clear and convincing evidence of a custom in the trade, we know of no principle of law which requires a buyer to accept or pay the seller either for a dead animal or an animal which has to be destroyed on delivery or shortly thereafter. We cannot read such a meaning into *R. S.* 46:30–21(5). The question would be one of failure of consideration rather than one of breach of implied warranty.

The judgment on the complaint is reversed and the action of the court below in dismissing the counterclaim is affirmed. No costs.

*For reversal in part and affirmance in part*—Justices CASE, OLIPHANT, BURLING and ACKERSON—4.

*For reversal*—Chief Justice VANDERBILT and Justice HEHER—2.

*For affirmance*—Justice WACHENFELD—1.