GEORGE PRICE AND MINNIE PRICE, PLAINTIFFS-RE-
SPONDENTS, v. B. CONSTRUCTION CO., A NEW JERSEY
CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 26, 1962—Decided December 21, 1962.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. Saul J. Zucker* argued the cause for appellant (*Messrs. Kristeller, Zucker, Lowenstein & Cohen,* attorneys).

*Mr. Matthew Krafte* argued the cause for respondents.

The opinion of the court was delivered by

KILKENNY, J. A. D. A jury in the Superior Court, Law Division, awarded plaintiff buyers $2561.18 as damages for the breach by defendant seller of a warranty that the cellar in the new home being sold would be free from water for a period of one year from the date of closing title. Defendant appeals from the judgment based on that verdict.

The agreement of sale was executed on December 15, 1958, covered a new home being erected at No. 24 Wesley Court, South Orange, New Jersey, and provided for a purchase price of $43,000. In a printed portion of the contract there was this provision:

"This contract is entered into upon the knowledge of the parties as to the land and whatever buildings are upon the same, and not on any representations made as to character or quality."

However, on typewritten addenda it was provided:

"The seller agrees to complete the house in all respects * * *."

Also, there was typewritten the following warranty upon which plaintiffs based their action:

"The seller warrants and represents that for a period of one year from the date of closing of title, it will guarantee that the roof will not leak, that the cellar will be free from water, and that the heating system will be in good working order, provided the purchaser takes proper care of said heating system. This shall survive the giving of the deed."

Defendant does not contest the jury's finding that there was a breach of the warranty as to the cellar's being free from water within the one-year period. Indeed, there was ample evidence that there were large accumulations of water in the cellar on numerous occasions within the one-year period following the closing of title on February 11, 1959; that defendant was notified thereof many times by plaintiffs and their attorney and promised to correct the situation but failed to do so; and that when the year was up, more particularly on April 1, 1960, defendant disclaimed liability and attributed the water conditions to physical alterations of the property by plaintiffs.

It cost plaintiffs $2561.18 to cure the water condition in the cellar. This included $2111.18 for a new drainage system, $200 for surveying and engineering fees, and $250 for re-sodding and top-soiling. There was testimony that the new drainage system would be good for the life of the building, or at least 50 years. Plaintiffs' witnesses established that the work done was necessary and the charges therefor were reasonable. The cause of the water condition was attributed to defendant's failure to provide outlets for the footing drains. Defendant offered no proof that an adequate remedy could have been effected in a more economical way, or that the cost of the work actually done was not reasonable.

The limited contention made by defendant on this appeal is that the trial court committed reversible error when it re-

fused to charge the jury at defendant's request that the damages to which plaintiffs were entitled must be prorated over the 50-year expectable life of the newly installed drainage system. In other words, defendant maintains that under its warranty that the cellar would be free from water for a period of one year after closing title, the damages assessable against it should have been only one-fiftieth of the $2561.18 cost of the new drainage system, or about $50. Defendant's position is that since it guaranteed only one year's freedom from water it should not be required to pay a sum which would give plaintiff 50 years' freedom from water. Stating the same contention otherwise, defendant asserts that the trial court erred when it charged the jury that if it found that the defendant was liable, plaintiffs were entitled to be compensated for the entirety of such sums of money as were required to be expended by them in correcting the defect complained of.

Defendant argues that 525 *Main St. Corp. v. Eagle Roofing Co.*, 34 *N. J.* 251 (1961), supports its legal contention. In that case defendant roofer repaired plaintiff's roof at an agreed price of $9800 and, as part of the bargain, covenanted:

"This work is guaranteed for a period of (5) five years from the date of completion against any and all leaks or defects due to natural causes and repairs shall be made during the period of this guarantee without cost to us [plaintiff's assignor]."

Defendant's work proved effective for about two years and thereafter the roof began to leak. Defendant made a number of repairs, but after a period disputed the scope of its responsibility. Thereupon plaintiff engaged another contractor to do a new job, having apparently concluded that the incidence of leaks was too great to permit any other course. At that time 2½ years remained of the original 5-year guarantee period. Plaintiff sued for damages for the breach of the guarantee. The trial court awarded 6¢ damages on the ground that plaintiff had not adequately proved the difference in value of the building with the roof installed in accordance with the warranty and the building with the roof as actually

installed. It rejected plaintiff's thesis that the formula of damages should be the cost of making good defendant's default.

The Supreme Court rejected as "awkward" the trial court's approach in admeasuring the damages. It said (34 *N. J.*, at *p.* 256):

"Since the purpose of a damage award is to give the claimant the benefit of the broken promise, we must first identify that benefit. The question is whether the parties bargained (1) for a 5-year result or (2) for work of greater expectable life but supported by a guarantee for a portion of that period. If roof work were involved with a life expectancy exceeding the period of the guarantee, the measure of damages might not be confined by the unexpired portion of the guarantee."

The court stated it was perfectly clear from the record that "the parties bargained for a 5-year result—a roof which would serve as a roof for that period with the aid of such repairs as might occasionally be required * * *." (34 *N. J.*, at *p.* 256). It determined that plaintiff was economically justified in what it did by way of repair, but that since there was no testimony as to the actual cost of the new work done "to permit a comparison between its benefit and the benefit defendant failed to deliver" (34 *N. J.*, at *p.* 257), it made sense to allow plaintiff "a portion of the contract price paid to defendant, prorated for the balance of the 5-year period [*i. e.* 2½ years]." (34 *N. J.*, at *p.* 258).

 Thus, applying the rationale of the *Eagle Roofing* case, the question in the instant case is whether the parties bargained (1) for a one-year result, or (2) for work of greater expectable life but supported by a guarantee for a portion of that period. We find that the second alternative is the more reasonable understanding of the warranty before us. It would be unrealistic to conclude that plaintiff buyers of a new $43,000 home were bargaining for a one-year result —a cellar that would be free from water for only one year. Unlike a roof which has a limited life due to its exposure to the elements, the cellar of a new house that remains free

from water for one year after its construction might reasonably be expected to remain free from water indefinitely thereafter. We think it clear that the parties here assumed that if there were defects in the construction of the house which would allow water to seep into the cellar, that condition would reveal itself within one year after completion of the house and that it was therefore reasonable to limit the period of the guarantee to one year.

In other words, if the condition did not arise within the year, defendant would be free from liability. But if the condition did arise within the year, defendant would be obligated for the fair and reasonable expense of rendering the cellar free from water, even though a proper job for that purpose would keep the cellar water-free indefinitely thereafter, as is generally the case.

Thus, when plaintiffs' cellar developed the water condition during the one-year period, the responsibility for eliminating it devolved on the defendant under its warranty. It failed to deliver what it had promised, and refused thereafter to abide by the contractual obligation. The cost reasonably incurred by plaintiffs in correcting the situation was $2561.18. Keeping the cellar free from water even for the one-year period would have entailed the same expense because the fault, as deduced from the evidence and the verdict, lay in defendant's original failure to provide outlets for the footing drains and the work done was the only way the fault could be corrected. Accordingly, the measure of damages fixed by the trial court was proper.

The judgment is affirmed.