219 N.J. Super. 483 (1987)
530 A.2d 824
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARLOS MENESES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1987.
Decided August 3, 1987.
*484 Before Judges FURMAN and STERN.
Alan Dexter Bowman argued the cause on behalf of appellant (Alan Dexter Bowman of counsel and on the brief; Raymond Miller Brown on the brief).
Richard W. Berg, Deputy Attorney General, argued the cause on behalf of respondent (W. Cary Edwards, Attorney General, Michael Weinstein, Deputy Attorney General, of counsel and on the brief).
*485 PER CURIAM.
Defendant and others were indicted for unlawful possession of at least 3.5 grams of pure free base cocaine, in violation of N.J.S.A. 24:21-20(a)(2), and possession of the same with intent to distribute, in violation of N.J.S.A. 24:21-19(a)(1) and 24:21-19(b)(2). Tried to a jury with co-defendant Baloca, defendant was convicted on both charges. The trial judge merged the conviction for possession into the conviction for possession with intent to distribute and sentenced the defendant to the custody of the Commissioner of Corrections for 15 years. Defendant appeals.
On this appeal, defendant argues:
POINT I THE COURT'S INSTRUCTIONS TO THE JURY RESPECTING THE LEGAL DEFINITION OF POSSESSION WAS ERRONEOUS AND DENIED APPELLANT A FAIR TRIAL.
POINT II THE STATE DID NOT ADDUCE SUFFICIENT EVIDENCE OF POSSESSION TO UNDERPIN THE CONVICTIONS. ACCORDINGLY, THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL.
POINT III EXPERT TESTIMONY ADMITTED BY THE COURT DENIED APPELLANT A FAIR TRIAL (Not Raised Below)
POINT IV THE COURT'S INSTRUCTIONS TO THE JURY RESPECTING THE TRACE OF COCAINE FOUND ON THE SCALE VIOLATED APPELLANT'S RIGHT TO INDICTMENT.
POINT V THE TRIAL COURT'S COMMENTS DURING DEFENSE COUNSEL'S OPENING STATEMENT DENIED APPELLANT A FAIR TRIAL.
Our careful review of the record convinces us that these arguments are without merit and do not warrant extended discussion, except to the extent noted herein. R. 2:11-3(e)(2). We agree with defendant that status as a mere guest in an apartment where drugs are located or possessed, without more, is not sufficient evidence to convict and that a mere guest is not guilty of possession of CDS. However, in light of the evidence, summations and jury charge, we conclude that the jury understood the mere guest argument and the fact that defendant had to be found guilty beyond a reasonable doubt of actual or constructive possession. The judge instructed the jury about actual and constructive possession and accomplice liability. He *486 advised the jury that "mere presence at or near the scene does not make one a participant or accomplice in the crime ..." and that "mere presence at the scene of the perpetration of a crime does not render a person an accomplice to it...."
The investigation leading to execution of the warrant and discovery of cocaine in the bathroom centered around another man, William Vieco, who had been staying at the Baloca apartment. Defendant had $1,023 in his wallet and had a beeper (similar to one found in the kitchen) attached to his pants at the time of the raid when he was found sleeping in the bedroom where the scale and cocaine residue were found. Defendant was not observed during the investigation which resulted in the warrant. Ms. Baloca testified that the drugs and scale belonged to Vieco who had been staying in her apartment and living in her bedroom for two or three days, that defendant "passed out" while visiting Baloca and was moved to the bedroom where he slept until the next afternoon when the raid occurred. Baloca further testified that she hadn't seen defendant for "maybe a month" before his visit the night before the warrant was executed. Defendant also presented his employer who testified that defendant had a beeper and the money for business reasons.
Admittedly there was no direct proof that defendant had previously been at the apartment before, that he was observed during the investigation or that defendant actually possessed the substance. Moreover, as noted above, the jury heard the testimony that the money and beeper were used for business purposes and that the cocaine and scale belonged to co-defendant William Vieco who was not present at trial.
We nevertheless conclude, given the scale and traces of substance in a metal dish in the bedroom where defendant was found sleeping,[1] and given the money and beeper on defendant's person, that a jury could find that defendant was one of *487 the people who possessed the CDS in the apartment. The jury understood the issues and did not have to accept the defense version. There was sufficient circumstantial evidence to warrant the convictions. See, e.g., State v. Brown, 80 N.J. 587 (1979); State v. Reyes, 50 N.J. 454, 458-459 (1967); State v. Smith, 210 N.J. Super. 43, 49 (App.Div. 1986), certif. den. 105 N.J. 582 (1986); N.J.S.A. 2C:1-5b; N.J.S.A. 2C:2-1c.
Defendant contends that a new trial is required as a result of a prejudicial comment made by the trial judge during defendant's opening statement. The following occurred as defense counsel was making his presentation:
This is my opening statement. [The prosecutor] in his opening statement told you about what he intended to prove. He told you about this indictment. I show you why it's one-sided. We were not allowed to be at that Grand Jury presentation 
THE COURT: Now, please. Number one, this is not an argument, Mr. Hobbie. Number two, that's not so; a defendant can go if he requests.
MR. HOBBIE [defense counsel]: Your Honor, we were not requested and I was not permitted.
THE COURT: You were refused?
MR. HOBBIE: I was never given 
THE COURT: Please don't argue with me. Proceed.
A similar comment, made by the prosecuting attorney, was the subject of consideration by the Supreme Court in State v. Spano, 64 N.J. 566 (1974). During his opening in that case, defense counsel stated, "And this today is the first time that the defendant, under our system, has an opportunity to enter a defense." 64 N.J. at 567. The assistant prosecutor interrupted defense counsel and stated,
Excuse me, your Honor. I apologize for objecting during the opening of counsel, but that's not correct. Mr. Spano had the opportunity, if he so desired, to appear before the Grand Jury and give testimony. [Id. emphasis added by (Supreme Court)].
Defense counsel responded by saying,
Well, that's true, I stand corrected. He could have appeared before a Grand Jury. But that's not a trial. And that's not a defense. And you only appear *488 before a Grand Jury by the consent and invitation of the Prosecutor. If he doesn't want you to testify, you don't testify. He controls who testifies before the Grand Jury. But, be that as it may, what I said is today, under our wonderful system of justice, this is the trial. [Id.]
Of significance, the Supreme Court in Spano unanimously stated,
The jury was receiving its first impression of the case and therefore it was strongly influenced by what transpired. The court did not interfere, nor were corrective or cautionary words forthcoming. The assistant prosecutor in effect said that the defendant, a police officer, could have come forward if he were innocent, but he was guilty since he failed to clear himself by appearing before the Grand Jury. The assistant prosecutor's contention is tantamount to a denial of the right of a defendant to remain silent. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965). Cf. State v. D'Ippolito, 19 N.J. 540 (1955). [64 N.J. at 567-568]
In Spano the Appellate Division had reversed defendant's conviction on other grounds and the Supreme Court affirmed the reversal. However, the Supreme Court made clear that the above-quoted statement of the prosecutor "alone" required reversal of the conviction and the granting of a new trial. 64 N.J. at 567.
We agree with defendant that Spano cannot be distinguished based on the fact that the judge, not the prosecutor, made the objectionable comment. As our Supreme Court has previously said, Griffin "forbids comment by the judge and prosecutor on a defendant's failure to testify." State v. DiRienzo, 53 N.J. 360, 379 (1969). See also e.g., Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); State v. Lynch, 177 N.J. Super. 107, 114-115 (App.Div. 1981), certif. den. 87 N.J. 347 (1981). Hence, an unwarranted comment by the judge can be as prejudicial, or more harmful, than one by the prosecutor. After all, the judge is a "neutral magistrate," and not a mere adversary making a presentation to the jury. The jury looks to the judge for guidance and advice and for instructions as to the law.
The Supreme Court opinion in Spano indicates that there were no "corrective or cautionary words forthcoming," 64 *489 N.J. at 567, and we presume that this may have referred only to an immediate response from the judge. The judge in this case advised the jury, as part of his instructions at the end of the case, to disregard any comments the court addressed to counsel. It is not clear in Spano whether or not a similar instruction was given as is the general practice, but in any event we are satisfied that the exchange quoted above cannot itself require reversal or that the Supreme Court intended the "harmless error" analysis not to apply in this context. As the Supreme Court stated in Spano,
... All concerned knew that no one appears before the Grand Jury unless he is subpoenaed or invited to testify in which event he must give his consent.
Despite defense counsel's failure to move for a mistrial, the prejudice flowing from the comment was definitely of such constitutional dimension as to rise to the level of plain error. R. 2:10-2. [64 N.J. at 568].
However, not every constitutional violation warrants reversal, R. 2:10-2, and the Supreme Court in Spano was concerned with improper remarks by the prosecutor and the issue of prosecutorial excess in the trial of criminal cases. We do not read Spano to be a decision which adopted a per se rule irrespective of impact, nor a prophylactic holding as a matter of "supervisory authority" over the conduct of State court proceedings. Compare United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).
In the context of the evidence against defendant, the improper remarks cannot be said to be so inflammatory as to warrant reversal. Even in situations where there have been direct comments on a defendant's failure to testify, reviewing courts have been admonished to consider such errors in the context of the trial as a whole. In United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106 (1983) the United States Supreme Court stated:
Since Chapman [Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.... The goal, as Chief Justice Traynor has noted, is `to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without *490 becoming mired in harmless error.' Traynor, supra, [R. Traynor, The Riddle of Harmless Error 14 (1970)] at 81.
Accord, State v. Macon, 57 N.J. 325 (1971). See also State v. Nittolo, 194 N.J. Super. 344, 348 (App.Div. 1984); State v. Lynch, supra, 177 N.J. Super. at 115-116; State v. Gould, 123 N.J. Super. 444 (App.Div. 1973), certif. den. 64 N.J. 312 (1973) (applying harmless error analysis in similar contexts). We are satisfied, beyond a reasonable doubt, that the judge's improper comments at the outset of the trial did not affect the result or lead "the jury to a result it otherwise might not have reached." State v. Macon, supra, 57 N.J. at 336.
Affirmed.
NOTES
[1] Given the conviction for possession with intent to distribute, we do not have to consider whether the indictment alleged possession of the traces or whether the substances found in the bedroom where defendant was sleeping was included within the indictment.